## CHICAGO, R. I. & P. RY. CO. *et al.* v. STATE.

### No. 3472.    Opinion Filed December 5, 1912.

#### (128 Pac. 900.)

CARRIERS—Rates—Regulation—Corporation Commission's Order.  An appeal having been prosecuted from an order of the Corporation Commission promulgating rates, rules, and regulations, and the commission having filed in this court its recommendations as to the modification of said order, and the appellants and appellee appearing and agreeing to submit said appeal on the record and said recommendation, and waiving the filing of briefs, it not being pointed out by specification of error wherein such order so modified would be unreasonable and unjust, **held**, that the recommendation of the commission will be adopted, and that said order will be affirmed as modified under said recommendation.

(Syllabus by the Court.)

*Appeal from State Corporation Commission.*

Proceeding by the State for the adoption and promulgation of certain grain rates, from which the Chicago, Rock Island & Pacific Railway Company and others appeal.  Affirmed, as modified.

*C. O. Blake, Cottingham & Bledsoe, R. A. Kleinschmidt; C. L. Jackson, E. A. De Meules, E. R. Jones, Geo. E. Black, L. P. Miles,* and *Chas. E. Warner,* for appellants.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the State.

WILLIAMS, J.  The Corporation Commission of the state of Oklahoma has filed, in writing, certain recommendations for modification by this court as to order No. 503, involved in this appeal.  All the attorneys for the appellants, and the Attorney General, for the state, appeared in open court and by agreement submitted the case upon the record in this appeal and said recommendations of the commission and waived the filing of briefs.

It is ordered that the commission's recommendations be adopted, and in lieu of the rates, rules, and regulations contained

in the original Order No. 503, that the rates, rules, and regulations contained in said recommendations, which are as follows:

## CORPORATION COMMISSION OF OKLAHOMA.

Cause No. 1,350.                    Order No. 503.

To the Atchison, Topeka & Santa Fe Railway Company, Chicago, Rock Island & Pacific Railway Company, Clinton & Oklahoma Western Railway Company, Ft. Smith & Western Railroad Company, Gulf, Colorado & Santa Fe Railway Company, Kansas City, Mexico & Orient Railway Company, Kansas City Southern Railway Company, Midland Valley Railroad Company, Missouri, Kansas & Texas Railway Company, Missouri, Oklahoma & Gulf Railway Company, Oklahoma Central Railway Company, St. Louis & San Francisco Railroad Company, St. Louis, El Reno & Western Railway Company, St. Louis, Iron Mountain & Southern Railway Company, and Wichita Falls & Northwestern Railway Company:

It is hereby ordered that on and after the 24th day of July, 1911, the railroads and railways named above shall not assess or collect a greater rate for the shipment, in carload lots, of the commodities named herein between points on their lines in this state than provided herein, and that, in so far as they are applicable, the rules and regulations named herein shall govern the handling and assessment of charges upon such commodities between points in the state of Oklahoma, and otherwise to be governed by rules heretofore or hereafter issued by this commission.

Item No. 1.

| Miles | Column 1. | Column 2. | Column 3. | Miles | Column 1. | Column 2. | Column 3. |
|---|---|---|---|---|---|---|---|
| 5 | 4.5 | 3.5 | 4. | 120 | 10. | 8. | 10. |
| 10 | 4.5 | 3.5 | 4.3 | 125 | 10. | 8. | 10.4 |
| 15 | 4.5 | 4. | 4.6 | 130 | 10.5 | 8.5 | 10.4 |
| 20 | 5. | 4.5 | 4.9 | 135 | 10.5 | 9. | 10.8 |
| 25 | 5. | 4.5 | 5.2 | 140 | 11.5 | 10. | 10.8 |
| 30 | 5.5 | 5. | 5.5 | 145 | 11.5 | 10. | 11.2 |
| 35 | 6. | 5. | 5.8 | 150 | 12. | 10. | 11.2 |
| 40 | 6.5 | 5.5 | 6.1 | 155 | 12. | 10. | 11.6 |
| 45 | 6.5 | 5.5 | 6.4 | 160 | 12.5 | 10.5 | 11.6 |
| 50 | 7. | 5.5 | 6.7 | 165 | 12.5 | 10.5 | 12. |
| 55 | 7. | 6. | 7. | 170 | 12.5 | 11. | 12. |
| 60 | 7. | 6. | 7.3 | 175 | 12.5 | 11. | 12.4 |
| 65 | 7. | 6. | 7.6 | 180 | 12.5 | 11. | 12.4 |
| 70 | 7. | 6.5 | 7.9 | 185 | 12.5 | 11. | 12.8 |
| 75 | 7. | 6.5 | 8.2 | 190 | 13. | 11.5 | 12.8 |
| 80 | 8. | 7. | 8.4 | 195 | 13. | 11.5 | 13.2 |
| 85 | 8. | 7. | 8.6 | 200 | 13. | 11.5 | 13.2 |
| 90 | 8.5 | 7. | 8.8 | 210 | 13. | 11.5 | 13.5 |
| 95 | 8.5 | 7. | 9. | 220 | 13. | 11.5 | 13.8 |
| 100 | 9. | 7. | 9.2 | 230 | 13.5 | 11.5 | 14.1 |
| 105 | 9. | 7. | 9.6 | 240 | 13.5 | 11.5 | 14.4 |
| 110 | 9.5 | 7.5 | 9.6 | 250 | 13.5 | 12. | 14.7 |
| 115 | 9.5 | 7.5 | 10. | 260 | 13.5 | 12. | 15. |

Chicago, R. I. & P. Ry. Co. et al. v. State.

| Miles | Column 1. | Column 2. | Column 3. | Miles | Column 1 | Column 2. | Column 3. |
|---|---|---|---|---|---|---|---|
| 270 | 13.5 | 12. | 15.3 | 350 | 15. | 13.5 | 17.1 |
| 280 | 13.5 | 12. | 15.6 | 360 | 15.5 | 13.5 | 17.3 |
| 290 | 14. | 12. | 15.8 | 370 | 15.5 | 14. | 17.5 |
| 300 | 14. | 12.5 | 16.1 | 380 | 15.5 | 14. | 17.7 |
| 310 | 14. | 12.5 | 16.3 | 390 | 16. | 14. | 17.9 |
| 320 | 14.5 | 12.5 | 16.5 | Over |  |  |  |
| 330 | 14.5 | 12.5 | 16.7 | 390 | 16. | 14.5 | 18. |
| 340 | 15. | 13. | 16.9 |  |  |  |  |

When exact distance is not shown use next greater distance.

### Item No. 2.

Rates named in column 1 of item 1 apply on shipments of buckwheat, buckwheat flour, cracked wheat, cerealine (except brewers'), crushed wheat, farina, farinose, pancake flour, pearl barley, prepared flour, rolled wheat, rye flour, wheat, wheat chops, wheat flour and chicken feed made of grain and seed only.

### Item No. 3.

Rates named in column 2 of item 1 apply on alfalfa meal, alfalfa feed mixtures, barley, bran, brewers' cerealine, brewers' grits, brewers' meal, brewers' malt, brewers' grist, chopped feed (other than wheat chop), corn, corn flour, corn germ, corn germ meal, corn meal, gluten feed, gluten meal, grain screenings, grits, hominy, hominy feed, gluten meal, Kafir corn, maize, middlings, oats, oat dust, oat flake, oat groats, oat hulls, oat meal, rolled oats, rolled rye, rye, shorts and speltz.

### Item No. 4.

Rates named in column 3 of item 1 apply on hay (prairie, timothy or alfalfa), straw and corn husks.

### Item No. 5.

Rates on the following commodities will be made by adding three (3) cents per one hundred pounds to the rates named in column 1 of item 1; Broom corn, seed, castor beans, flax seed, hemp seed, Hungarian seed, millet seed, pop corn, alfalfa seed, linseed cake, linseed meal and sorghum seed.

### Item No. 6.

The rates named in column 1 to 3, inclusive, of item 1 are for application on shipments moving via one line or via two or more lines which are directly or indirectly under the same management and control. for shipments moving via more than one line not under the same management and control add the following arbitraries:

|  | 2 lines. | 3 lines. |
|---|---|---|
| Commodities named in item 2 | 2½ | Use two line rate plus local |
| Commodities named in item 3 | 2 | for each additional line. |
| Commodities named in item 4 | 3 | 5 |
| Commodities named in item 5 | 4 | 6 |

—observing combination of local rates as maximum.

Note.—Where switching service is necessary at a stopping or transit point, switching charges shall be assessed as per Order 440 and such service shall not be considered as forming a two-line haul.

### Item No. 7.

Minimum weights on commodities mentioned herein shall be as follows:

(a)  Hay, straw or shucks, cars to be loaded to actual visible loading capacity, minimum weight of 17,000 pounds to be assessed.

(b)  Grain products and mixtures named in (a), item 9, 24,000 lbs.

(c)  Commodities named in item 5, oats, barley, alfalfa meal, alfalfa feed mixtures and Kaffir corn, 30,000 pounds.

(d)  Wheat, rye and corn marked capacity of car.

Provided, when cars are loaded to actual visible loading capacity or to marked load limit, actual weight, but not less than 30,000 pounds, shall govern.

### Item No. 8.

Cars must not be loaded in excess of ten per cent. of their marked capacity and if cars are loaded in excess of this limit, carriers may transfer overload to a second car, the minimum weight to be applied on the entire shipment to be the marked capacity of the car in which shipment was originally loaded and for such transfer service the carriers may assess the actual cost plus ten per cent., which shall follow as charges against the shipment.

### Item No. 9.

Commodities mentioned in this order may be shipped in mixed carloads subject to the following provisions:

(a)  Grain, grain products and seeds, all or all but one of the commodities to be in sacks or packages, subject to carload rates applicable to each commodity contained in the car on the actual weight of such commodity, provided, that when such cars do not contain the minimum the deficiency shall be charged for at the rate applying on the commodity taking the lowest rate.

Provided, that not more than 33⅓% of the weight shall be grain, and if in excess of this amount of grain is shipped in such mixed car, charge shall be made for the grain products at the minimum car weight and the grain shall be charged for at the actual carload rate at actual weight.

(b)  Coarse grains consisting of barley, corn, Kaffir corn, oats, rye and wheat may be shipped in mixed carloads, sacked or in bulk, at the highest rate and minimum weight applicable on any commodity contained in the car.

Provided, if shipped in bulk, bulk heads or partitions shall be provided by or at the expense of the shipper and such shipments shall be at the owner's risk of mixing.

### Item No. 10.

Commodities mentioned in items 2 to 5, inclusive, may be stopped in transit as per the conditions hereafter mentioned and refordwarded at the through rates applicable from point of origin to final destination, provided such shipments are tendered at such stopping point within one year from the date they were received at such stopping or milling points.

### Rule No. 1.

(a)  One stop in transit shall be allowed at a point on the line of the carrier originating the shipment or the next connecting carrier for

the purpose of inspection, weighing, cleaning, clipping, shelling, sacking, mixing, grading and storing.

(b)    In addition to the privilege granted in (a) one stop may be allowed for the privilege of milling.

Note:—See Rule No. 6 relative to reconsigning.

### Rule No. 2.

A daily record shall be kept by operators of elevators, mills, etc., of all articles entitled to the privilege shown above unloaded into and out of such elevators, mills, etc., and such record shall include in and out bound tonnage received by rail, water, wagon or other means.

### Rule No. 3.

The record of such tonnage as maintained by such elevators, etc., shall be in such manner as to permit a check of same and the carriers mentioned above, either separately or jointly shall have the authority to appoint inspectors who shall be permitted to check such statements at such times during reasonable business hours as they deem necessary, and it shall be the duty of such inspectors when making such checks to cancel all billing in excess of tonnage in such elevator, etc., at the time such check is made and in making such cancellations they shall cancel the oldest unexpired billing first proportionately between the different lines interested.

### Rule No. 4.

Where a transit point is located at the junction of carriers, billing shall be interchanged by such carriers as though shipment was moving through, but an outbound shipment from such a junction point cannot be composed of shipments received at such junction point via the lines of more than one carrier. Where a shipment arrives via the line of one road and after receiving transit privileges is forwarded via the line of another carrier from such junction, the agent of the line bringing the shipment to such transit point shall certify to the agent of the forwarding carrier, a copy of the whole or such part of the inbound bill as may be requested by the shipper, and the forwarding carrier shall then issue new bill of lading treating the shipment as though it was billed through from the original point of origin.

### Rule No. 5.

Where a shipment from transit point, either a junction or local, is not sufficient to make up the required minimum carload weight, sufficient tonnage may be added to maintain such minimum and the flat carload rate transit point to final destination shall be applied on such additional tonnage.

### Rule No. 6.

Transit privileges provided herein shall be permitted whether shipments move from original point of origin to transit point and then either in a forward direction or in the direction of, to or beyond the point of origin and the rate shall be assessed by figuring the mileage from actual point of origin to final destination.

Provided, that where the combination on the shipment before and after transit privilege exceeds 350 miles that in addition to the regular mileage rate five mills per ton per mile shall be added for each mile in excess of 350 miles if the shipment has not moved from original point of origin to final destination on a direct haul in one direction.

Opinion of the Court.

· Note.—Reconsigning rules mentioned in this Commission's Order No. 170 shall govern this order with the · exception of an additional charge on hauls over 350 miles in lieu of 450 miles as stated in Order No. 170 and such reconsigning, where cars are not opened at reconsigning points, shall not be considered as being granted privileges mentioned in (a) and (b) of rule 1.

### Rule No. 7.

When shipments are tendered to carriers at transit points shippers shall also present to the agent expense bills covering in-bound tonnage in order to secure advantages of the transit rate and out-bound shipments may be composed of parts of one or more cars of in-bound shipments where all of such in-bound shipments came to transit via the line of the one carrier.

### Rule No. 8.

Transfer of tonnage is permissible, but the same must be by formal assignment or order and not by indorsement in blank. The freight bills must be representative of the property. Tonnage may be transferred from one ·elevator, etc., to another elevator, etc., and the freight bills therefor must show such transfer. The records must always be so maintained so that the actual movement of the grain may be traced.

### Rule No. 9.

Shipments must be made from transit points within twelve months as per paid freight bill from the time received at transit stations. If held longer than twelve months the freight bills will be canceled and no transit privilege permitted on same.

### Rule No. 10.

When cars contain mixed lots the forwarding agent at milling station must take up freight bills representative of each kind of article loaded in order to apply transit rate on such shipments.

### Rule No. 11.

Where shipments reach transit point via a line not having trackage connection with the elevator, etc., to which shipment is consigned and it is necessary to switch same via another line, regular switching charges shall be assessed for such movement and the movement via such line or lines shall not be considered as causing a two or more line haul.

### Rule No. 12.

When corn in the shuck or on the cob is shipped into the transit point for shelling or milling, transit privilege shall be permitted on but 80% of the in-bound weight, the 20% being allowed as the weight of the cobs and shucks, and in reckoning the charges the in-bound charges shall be reduced ten (10) per cent.

Example:  30,000 pounds in-bound—permit transit privilege on 24,000 pounds and assess charges on 27,000 pounds in-bound.

### Rule No. 13.

Where transit privileges are accorded shipments of feed or other mixtures of grain and grain product with or without alfalfa in-bound expense bills surrendered, must be representative of the actual out-bound shipment in exact percentage proportion, and the shipper must

so certify to the agent at transit station by signed declaration on the back of expense bills, indicating the percentage of the constituent parts of the out-bound mixture.

For illustration. If an out-bound shipment aggregating 60,000 pounds contain 60% corn and 40% alfalfa in-bound expense bills must be surrendered for 36,000 pounds of corn and 24,000 pounds of alfalfa.

### Item No. 11.

The railways and railroads named herein shall prepare and publish joint tariffs to carry out the provisions of this order and such tariffs shall be filed with each agent and two copies for the account of each carrier named herein shall be filed in the office of this commission.

The commission reserves the right to direct the basis for revenue divisions wherever carriers fail to agree.

### Item No. 12.

All orders or parts of orders heretofore issued by this commission which in any way conflict with the rules named herein are hereby canceled and superseded, the commission reserving the right to relieve the carriers, consignors or consignees of any hardships caused by the enforcement of the rules and regulations named herein either before or after movement.

—be and are hereby made effective as of the date of said original order, to wit, the 24th day of July, A. D. 1912. Tariff under this order to become effective as to the various lines when the schedule of rates is printed and filed with the commission.

All the Justices concur.